EMILE C. GEYLIN v. BRUTUS DE VILLEROI.

Letters in the French language offered in evidence, ordered by the court to
be translated into English by a translator, and such copies sworn to by
him, to be read in evidence.

If a contract be made and the defendant leaves the country and continues
abroad and beyond the seas for seven years, the action upon it is not
barred by the statute of this State.

No written instrument, nor particular form of words is necessary to the
appointment of an agent.    An agency may be created either by express
words, or by the acts of the principal and agent, or it may be implied, or
inferred from circumstances and the conduct of the parties; and it may
be general, or special, and established by either direct, or indirect evi-
dence, provided the facts and circumstances disclosed fairly justify such
an implication or inference.    The act of the agent is the act of his prin-
cipal and the latter is bound by all the acts, contracts, orders and pro-
ceedings of his agent done, made, given or undertaken in good faith and
in due execution of the authority conferred upon him for the purpose.
And wherever the acts of the agent will bind the principal, there the
representations, declarations and admissions of the agent in respect to
the same subject matter, will also bind him, if made at the time of the
transaction; and such statements, representations or admissions so made,
may be proved in the cause, as verbal facts or acts constituting a part of
the transaction itself, and as original evidence in the case, and therefore
it is not necessary to call the agent himself to prove them, but they may
be proved by any other witness who heard them and is able to testify to
them.    And the measure and scope of the agent's authority when not
specifically or expressly defined, must be ascertained and determined by
the nature. necessities and requirements of the thing to be done, or ac-
complished by him.

ASSUMPSIT for work and labor, with the usual pleas.
The suit was commenced September 6th, 1859, and to the
plea of the statute of limitations the plaintiff replied that
before and at and after the accruing of the cause of action,

the defendant was in parts beyond the seas, and not in any part of the State of Delaware, or of the United States of America, to wit, at &c., and that afterward, to wit, on &c., he the said defendant returned from the parts or place beyond the seas, where the said defendant so was aforesaid, into this State, which said return of said defendant, was his first return into this State from said parts or place beyond the seas, where the said defendant so was as aforesaid, after the accruing of the said cause of action; and the said plaintiff further saith that he commenced this suit within three years next after his, the defendant's first return in this State; and this &c. To this replication the defendant rejoined and took issue.

The demand of the plaintiff was for work and labor under a contract to construct a saw mill for the defendant on a large timber estate, owned, or contracted for by the latter, on the river Susquehanna in the State of Pennsylvania, amounting in the aggregate to $1,783 84, subject to a credit of $310.

The proof was that the defendant, de Villeroi, was a Frenchman who could hardly speak a word of English, even at the time of the trial. That he came to this country about the year 1848, and in the following year purchased, or entered into a contract to purchase a large tract of land in Clinton County, Pennsylvania, on which he paid $10,000, executing a mortgage upon it for the balance of the purchase money, payable by installments. In his visits to purchase it he was always accompanied by a Mons. Montalant with whom he resided in Philadelphia, who spoke English and did all the talking for him, interpreting between him and the owners in the negotiation for the purchase, and also wrote letters on his behalf in matters of business in the character of, and as an agent for him. In the following year of 1850, the latter returned to France and remained abroad for several years, and until a short time before the commencement of this suit, when he returned to this country and took up his residence temporarily in this State. After his departure

for France, Montalant endeavored to obtain an extension of the time for the payment of the last installment of $20,000 on the mortgage, when it became due, and stated that he was expecting funds from Mons. de Villeroi to meet it. This was on the 29th of September, 1850. After the defendant had purchased the land he went with Montalant in January of that year to view it, and after spending several days in examining it, departed, leaving the latter, who remained in the neighborhood until some time afterward, gave orders about the land, paid bills and after his return to Philadelphia, corresponded by letters in relation to the business. Saw mills were soon afterward commenced and built and machinery for sawing lumber was erected on the lands, and he wrote by letter to a witness examined for the plaintiff, that the latter had been sent there to do the mill-wright work and put up the machinery of the mills, and stated that he and the defendant, de Villeroi, expected to move into and take up their residence in the vicinity, the latter to attend to the coal lands and he to live on the land and to attend to the cutting and sawing of the lumber; and that he afterward sent an agent up to the lands to attend to matters connected with the business.

The plaintiff, Geylin, was also a Frenchman, or a foreigner, and was the inventor of a water-wheel called Geylin's Turbine, said to be an ingenious and valuable invention. His contract on which the action was founded, appeared to have been made by letters, the correspondence being in the French language, and were put in evidence after being duly proved, the court ordering translated copies of them in English to be prepared, sworn to and laid before the jury. The correspondence was commenced with the plaintiff by the defendant himself, and the first letter was as follows: " Villeroi Village, 17th of February, 1850. My dear Mr. Geylin : Here are the conditions by which we desire you to enter into our business of the Susquehanna. 1st. You will give us the sum of one thousand dollars at the delivery of the deed. 2d. You

40

will make for us two Turbines for the present saw mills at a proper and just price with their accessories and erection up to putting them in motion. 3d. You will give your time for two years from the beginning of the works for the equivalent of the sum of the 3000 acres. ($4000.) Your engagement will be of 4 to 5 years at your wish. 4th. Your part though undivided from ours for the productions, will be laid out as you wish it, and you have the right to establish thereon such industry as you may like on your own account. 5th. Besides your salary, your part will give you the right to one twelfth of the net income of whatever nature they may be, from the whole extent of the property. I wish that this well founded chance to make a fortune may enter into your pecuniary arrangements. On our side we shall be happy to have you and I think we will get on well together. Friendly remembrance on the part of Mr. Montholon; Your &c., de Villeroi. P. S. I will take your answer at Philadelphia where I expect to return soon." The next letter was of the date of April 4th, 1850, from Montalant to the plaintiff in the following words: " Mr. Geylin : By this letter I authorize you to construct two turbines for two saw mills located on my lands, west branch Susquehanna, Clinton County, Pa., which turbines are to be erected and ready for operation the first of June 1850. The construction, transportation and mounting at our expense, and for the above named works I bind myself to pay the sum of one thousand dollars. Per procuration of B. de Villeroi, J. O. Montalant. " Two other letters from him to the plaintiff, one dated May 30th, and the other July 22d, 1850, were also read in evidence; but as they related only to certain correspondence which he had in the meantime with the defendant then in France, in regard to supplying him with the necessary funds to pay the balance due upon the mortgage and for the purchase of the land, it is not material to allude any further to the contents or the substance of them.

In the discussion of the case before the jury the only question presented to the court and debated by counsel was, whether upon this evidence Montalant was the agent of the defendant for the erection of the saw mills referred to, and had authority as such, to order the turbine wheels of the plaintiff and to employ him to erect and construct the machinery for them. No authorities, except one or two on the general principle of agency, was cited on either side, in the argument.

*The Court, Gilpin, Ch. J.*, charged the jury : The statute of limitations had been pleaded in the case and much had been said by the counsel for the defendant in regard to the staleness of the demand and the fact that the suit had not been brought in the State of Pennsylvania, where both of the parties at present reside, instead of in this State. But in reference to such an objection it is only necessary for the court to remark that in a case like this, the plaintiff had a right to bring his suit wherever he might choose to institute it, and could find the defendant and be able to serve him with process in the action, provided it is not barred by statutory limitation, or by presumption of payment arising from lapse of time. From the evidence it appeared that the defendant left this country for France early in the spring of 1850 and was abroad and beyond the seas until the latter part of the year of 1857, or the beginning of 1858, when he returned to the country for the first time after his departure from it, and afterward came into this State, where legal process in this action was sued out on the 6th of September, 1859, and served upon him. It also appeared from the evidence that the contract was made in the month of May, 1850, by J. O. Montalant, professing to act as the agent of the defendant and by his authority for that purpose, and that the work was performed pursuant to the contract in a short time after that by the defendant. Under these circumstances it is the province of the court to say to the jury that the demand of the plaintiff is not barred by the

statute of limitations in this State; and if there had been no other defence set up by the defendant, it would not be necessary for the court to say anything further to them in relation to the case.

But the agency and authority of Montalant to make this contract and to order this work to be done for and on account of de Villeroi, the defendant, is denied and repudiated by the latter, and the court has been requested by both sides in the argument, to instruct you in regard to the question and as to the principles of law on this point in regard to the subject or matter of agency.

There is no special character or description of written instrument, nor any particular form of words, necessary to the appointment of an agent. The modes of appointment are various, and the agency may be created either by express words, or acts, of the principal, or it may be implied or inferred from the circumstances and conduct of the parties. The authority conferred may be either general or special; and the fact of agency, of either description, may be established, either by direct or indirect evidence. It may be shown directly, by express words of appointment, either spoken or written. Or, it may be implied or inferred, or indirectly shown, by evidence of the relative situation of the parties, the nature of the business which is the subject of controversy, and the character of the intercourse between them, provided the facts and circumstance disclosed by the evidence, fairly justify such an inference. The acts and doings of the party sought to be charged as principal, in relation to the subject matter, may be, and often are, quite as expressive and significative as words spoken.

It is in evidence before the jury, and does not appear to be disputed, that the defendant, prior to the year 1850, that is in February, 1849, became the owner by purchase of a large tract of land in Clinton County, Pennsylvania, upon which he contemplated erecting certain Mills, and other improvements. These facts are proved by the testimony of William Cuppinger, and the letter of the

defendant addressed to the plaintiff under date of February 17, 1850. The defendant is a Frenchman,—and was, at the time of those transactions, but slightly, if at all, acquainted with the English language. His ignorance of the language, made it necessary that he should avail himself of the services of some one in his business intercourse with others. He stopped or staid with Mr. Montalant, in Philadelphia, in 1848–49 and the winter of 1849 and 1850. Mr. Montalant made all his appointments with Mr. Cresson—always accompanied him, enjoyed his confidence, was his interpreter through whom he spoke and carried on his business arrangements and wrote business letters for him to Mr. Cresson which were acted on by the parties.

Mr. Montalant acted on behalf of the defendant in endeavoring to obtain from Mr. Cresson an extension of the time for the payment of the installments due, or becoming due under the mortgage on the lands in Clinton County. Mr. Montalant accompanied the defendant to these lands in June, 1849. They staid with Mr. Norman Butler, the person in charge of the land. Mr. Butler received his orders as to what was to be done in getting out timber for the contemplated improvements from Mr. Montalant in the presence of the defendant, and by his directions, as Butler supposed from their manner and conversation. Montalant appeared to proceed altogether according to defendants directions, and he appeared to act for the defendant as his agent.

After the defendant left Clinton County, Montalant continued to reside on the lands for five or six months, up to the month of January, 1850, when he returned to Philadelphia, and during all this time, he had the entire charge of the work and improvements then going on, and gave all the orders, and paid all the bills for them.

Such, substantially, is our recollection of the testimony of Mr. Butler, but if we have misstated any fact, you will correct it, or if I have omitted any material fact you will supply it.

It is upon this testimony of Wm. Cuppinger and Norman Butler, disclosing the relations in which the defendant and Mr. Montalant stood to each other, taken in connection with the letter of the defendant to the plaintiff, that you are called upon to determine the question,—whether or not Mr. Montalant was the agent of the defendant, Brutus de Villeroi, with authority to make or cause certain mill improvements and machinery to be made and erected, on the lands in Clinton County, of which the defendant was then the owner. This is a question of fact for your consideration, and it is the most material and important question which is devolved on you for your determination.

If, after carefully examining and considering the evidence which you have heard, and applying the rules of law which have just been stated, in respect to inferential or implied agency, you shall be of the opinion that Mr. Montalant was such an agent for the defendant, and for the purpose mentioned, then, if such be your opinion, it becomes our duty to say to you that the letters addressed by Mr. Montalant to the plaintiff, are properly evidence in this case, and are as binding on the defendant, as if they had been written by himself. For it is the well settled doctrine of the law, founded in good sense and sound justice, and indeed, absolutely indispensable for the exigencies of business affairs, that the principal is bound by all the acts, contracts, orders and proceedings of his agent done, made, given, or undertaken in good faith and in due execution of the authority conferred upon him for the purpose.

Wherever one person appoints another his agent, to represent him in any business transaction, then whatever the agent does within the scope of his authority, or in the lawful prosecution of that business, becomes in law the act of the principal whom he represents. And, that wherever the acts of the agent will bind the principal, there, the representations, orders, declarations, admissions and statements of the agent in respect to the same sub-

ject matter or business, will also bind the principal, if made at the time of the transaction.

These representations, orders, declarations, admissions, or statements are received and considered as original evidence, as verbal acts or facts constituting part of the transaction itself and not as hearsay; and therefore, it is not necessary as has been contended for, to call the agent himself to prove them, but they may be proved by any other competent testimony or witness.

But it is insisted by the counsel for the defendant that the fact of agency has not been proved in this case, neither expressly nor by implication or inference. If it has not, then certainly, the plaintiff's case has failed, and your verdict should be for the defendant. But if, on the other hand, the existence of the agency has been shown to the satisfaction of the jury, either expressly, or by implication or fair inference, then we say, the plaintiff is entitled to recover for whatever was done, supplied or expended under the directions of the agent and within the scope of his authority.

But, although it is perfectly true as a general rule, as stated by the counsel for the defendant, that the agent must not exceed the general scope of his authority; yet, it is equally true, that the extent, or scope of the authority conferred on the agent, depends upon the nature and character of the business to be done or transacted, and it is, (unless a contrary intention manifestly appears,) always construed to include all the necessary means of executing it with effect. And not only are the means necessary and proper for the accomplishment of the end proposed included in the authority, but also all the various means and methods, which are justified, or allowed, in that particular trade or business. The scope of the authority must be measured by the nature, requirements, and necessities, of the thing to be done and accomplished.

The agency may be either general, or special and limited. A general agent, is, 1st, a person authorized by his principle to transact all his business of a particular kind, or, he

is a person who being engaged in a certain trade or business, and is employed by his principal to do certain acts or things for him in the course of that trade or business. In both of these cases the agent will, if there be no limitation of his authority known to these parties, be taken as to them, to be a general agent, and will therefore have the power to bind his principal by all contracts entered into with such third parties, which are within the scope of his ordinary employment.

The duty, therefore, of determining the extent to which the principal has accredited his agent, is devolved on the jury; and if they are satisfied, that the principal by his conduct, words, or acts warranted the agent to hold himself out to the world as possessing certain authority in that respect, he, the principal, will be bound by the exercise of that authority, whether the agent really possessed it or not.

The plaintiff had a verdict.

*Booth,* for plaintiff.

*Patterson* and *Whitely,* for defendant.